# UNITED STATES DISTRICT COURT

District of New Jersey

Chambers of
**William H. Walls**
District Judge
_____

(973) 645-2564
(973) 645-3436 Fax

Martin Luther King Jr.
Federal Courthouse
50 Walnut Street
Newark, New Jersey 07102

NOT FOR PUBLICATION

MEMORANDUM

ORIGINAL ON FILE WITH CLERK OF COURT

September 4, 2007

**Appearances:**

**Plaintiff**
Leroy T. Moore, *Pro Se*

**Attorneys for Defendants**
Gary S. Spagnola
Jeffrey S. Bell
Andrew W. Li
Golden, Rothschild, Spagnola, Lundell, Levitt & Boylan, P.C.

Re:   Moore v. Novak, et al., No. 04-1250 (WHW)
       Defendant Wayne Hundemann's Motion for Summary Judgment

Dear Litigants:

   Defendant, Officer Wayne Hundemann, moves for summary judgment. His motion is denied.

**FACTS AND PROCEDURAL BACKGROUND**

**1.  Factual Background**

Plaintiff, Leroy Moore, brought this civil rights action, pursuant to 42 U.S.C. § 1983, against Ellen Winouski ("Winouski"), Sgt. Raymond Novak ("Novak") and Officer Wayne Hundemann ("defendant") of the Carteret Police Department alleging false arrest, malicious prosecution, and excessive force in violation of the Fourth Amendment to the United States Constitution.  Plaintiff sought money damages and injunctive relief restraining defendants from further assaulting or harassing him.

The following facts are largely undisputed.  On May 17, 2002, Novak was detailed to Carteret Police headquarters to assist in the investigation of a reported armed robbery in the area near St. Joseph's church in Carteret, New Jersey.  Novak met the alleged victim, Winouski at headquarters, where she said she had been robbed at knife-point by two men, one on foot and the other on a bicycle.  Winouski reported that the men called her a "whore" and a "bitch," held a knife under her chin, and took about $60 from her pockets.  Winouski described the men as African-American males in their twenties, one of whom wore a light blue shirt, dark blue shorts, and a two-toned blue rag on his head.

Novak then took Winouski to the location where the robbery allegedly took place.  As they approached Chrome Park, Winouski identified a male standing near the basketball court and bench as the man who robbed her.  Novak observed the male, later determined to be plaintiff, wore a light blue shirt, dark shorts, and a two-tone blue head rag.  Winouski told Novak that she was "absolutely positive" that this was the man who had robbed her.  Novak then radioed this information to all patrol cars.

Defendant, who was searching the area in an effort to identify the suspects, received Novak's transmission that the victim had positively identified an individual standing near the

-2-

benches in the basketball court in Chrome Park as the robbery suspect.  Defendant drove to the basketball court where he observed the suspect.  Defendant parked, got out of his car, and approached the plaintiff.

The parties dispute what occurred when the defendant confronted the plaintiff.  Defendant alleges that he advised plaintiff that he was under arrest and directed him to place his hands on the patrol vehicle.  Defendant alleges that plaintiff started to comply with the order, but then told defendant words "to the effect of fuck you, I'm not under arrest," and started to walk, then run, away through the park.  Plaintiff alleges that defendant never told plaintiff that he was under arrest, stating only, "I want to talk to you."  Plaintiff disputes that he directed an expletive at the defendant, but admits that he started to run away through the park.  Plaintiff later testified that he had about 30 bags of crack cocaine concealed on his body, including in a brace on his wrist, which caused him to flee.

Defendant pursued the plaintiff on foot, during which he observed the plaintiff attempting to remove a clear plastic material from the pocket of his shorts.  Police later recovered a plastic bag filled with 37 small foil balls of crack cocaine in the area.  As plaintiff ran, Novak drove his vehicle through Chrome Park in an effort to cut off the plaintiff's escape.  Plaintiff ran through an empty lot located on the corner of Salem Avenue and Warren Street and jumped over a fence into the rear yard of 9 Salem Avenue, where he stumbled and fell.  Plaintiff then ran toward the front of 9 Salem Avenue through an alleyway.  Novak radioed the plaintiff's position to defendant, and pursued plaintiff on foot.

In the alleyway, plaintiff ran into the defendant, who was coming from the opposite direction with his weapon drawn.  Defendant directed plaintiff to lie prone on the ground and

-3-

place his hands behind his back so handcuffs could be applied.  Novak arrived on the scene at this point and witnessed defendant covering the plaintiff as he lay on the ground.  The parties appear to substantially agree that defendant handcuffed plaintiff's left hand in front of Novak.  In his report after the arrest and in his later certification, defendant stated that he was responsible for handcuffing plaintiff.  However, defendant noted in his answer to plaintiff's interrogatory that it was *Novak* who handcuffed plaintiff.[1]

The parties dispute what followed.  Defendant states that plaintiff refused to reveal his right hand, which was in a cast or brace and was tucked under his stomach.  Defendant alleges that he was concerned that plaintiff, who was suspected of armed robbery, was concealing something, possibly a weapon, in his cast.  According to defendant, due to plaintiff's refusal to reveal his arm, defendant "pin[ned]" plaintiffs arm and hand to the ground "until his handcuffing could be completed."  Plaintiff asserts that he had both his hands out while he lay on the ground, and that defendant stomped on plaintiff's right hand before it was cuffed, causing the plaintiff to pull it beneath him.  Plaintiff states that he was injured by defendant's use of force in securing his right hand.

When plaintiff's right hand eventually came out from beneath his stomach, defendant handcuffed the plaintiff.  Defendant then escorted plaintiff to a marked car for transport.

---

[1] The parties also disagree as to how long Novak was present.  Novak testified that he was present and "covered" the plaintiff while defendant handcuffed both of plaintiff's wrists.  Plaintiff alleges that Novak was only present while his left wrist was handcuffed, and left shortly after informing defendant that a positive ID of the suspect had been made.   Defendant does not specifically mention how long Novak was at the scene.

Plaintiff claims that defendant's conduct exacerbated injuries he had previously sustained to his hand during a few weeks before the incident.[2] The record reveals that on May 1, 2002, over two weeks before the incident, plaintiff was diagnosed with a displaced fracture in the mid shaft of the his right ring finger. Plaintiff was directed to return to the hospital for treatment but failed to do so. Plaintiff also testified that he had sustained an injury to his right hand in the early nineties, but did not receive treatment for it.

At trial, plaintiff was acquitted of the armed robbery charge but convicted of the drug-related charges, convicted of resisting arrest, and sentenced to eight years in prison.

## 2. Procedural Background

On March 16, 2004, plaintiff filed a complaint naming defendant (Hundemann), Novak, and Winouski as defendants. The complaint consisted of three claims against the defendants: (1) false arrest; (2) malicious prosecution; and (3) excessive force in violation of the Fourth Amendment to the United States Constitution.

In an opinion dated September 29, 2004, this Court dismissed *sua sponte* all of the claims against Novak and Winouski with prejudice. It dismissed plaintiff's claims of false arrest and malicious prosecution against defendant. The Court did not dismiss plaintiff's claim that defendant used excessive force in violation of the Fourth Amendment.

Defendant moves for summary judgment on four grounds. First, defendant argues that he did not use excessive force in arresting and securing the plaintiff. Second, he argues that the plaintiff failed to prove that the alleged incident caused his current injury. Third, defendant

---

[2] As discussed below, plaintiff alleged in his complaint that defendant broke his hand, but later testified that his pre-existing injuries were exacerbated by defendant's actions.

argues that he is entitled to qualified immunity. Fourth, he argues that punitive damages are inappropriate.

**GENERAL STANDARDS**

### I. Summary Judgment

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only the existence of a genuine and material factual dispute between the parties will defeat a motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could find for the non-movant on the issue; it is material if, under the substantive law, that issue would affect the outcome of the suit. See id. at 248.

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]" that show that there is no genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, the nonmovant must present more than a mere scintilla of evidence in his favor. Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

## DISCUSSION

**I. Excessive Force**

Excessive force is a totality of the circumstances determination focusing on the reasonableness of the officer's conduct.  Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004).  An excessive force claim must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and must allow that "police officers are often forced to make split-second judgments-in circumstances that are often tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation."  Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).  An officer's use of force is permissible as long as it is reasonable.  See Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995).  To determine whether a Fourth Amendment violation has occurred, a court must evaluate the reasonableness of the conduct in light of factors including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  Carswell, 381 F.3d at 240 (3d Cir. 2004).

An officer is entitled to commit a battery pursuant to a lawful arrest so long as he does not use excessive force. Edwards v. City of Phila., 860 F.2d 568, 572 (3d Cir. 1988). "[O]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Saucier v. Katz, 533 U.S. 194, 208 (2001) (citing Graham, 490 U.S. at 396). However, where a plaintiff "alleges actual injury inflicted by a police officer in the course of an arrest, and supports his allegation with specific facts so that it cannot be said as a matter of law that the use of force was objectively reasonable, the issue of whether excessive force was employed must be left to the trier of fact." Kopec v. Tate, 361 F.3d 772, 778 n.7 (3d Cir. 2004).

Here, it is uncontested that plaintiff was identified as the perpetrator of an armed robbery of an elderly woman at knife-point at mid-day and fled from the police. The critical issue is whether the defendant intentionally "stomped" on or "kicked" plaintiff's injured wrist in the course of the arrest. The parties' testimony on the subject is conflicting. Plaintiff admits that he resisted the defendant's attempts to secure his right arm because he had a brace on it. But plaintiff also testified that the defendant deliberately stomped on his wrist before the officer even attempted to apply the handcuffs, causing plaintiff to retract his right arm under his body and contributing to his alleged injury.

Defendant disputes plaintiff's account. Defendant asserts in his certification that he "secured Leroy Moore's right arm and hand by pinning them to the ground until his handcuffing

could be completed." But in answering plaintiff's interrogatories, defendant replied that it was Novak, not defendant, who applied the handcuffs.[3]

At this stage, the Court finds that there exists a genuine question of fact. The parties dispute whether defendant merely pinned plaintiff's arm or repeatedly stomped on it. Resolution of this factual question requires a determination of credibility, which is inappropriate on a motion for summary judgment. Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993). ("At the summary judgment stage, the court may not weigh the evidence or make credibility determinations.").

This question of fact is material as well. Plaintiff's hand was in a brace or cast. From plaintiff's version of the facts, defendant stomped on plaintiff's outstretched hand while defendant was lying prone. A reasonable jury, crediting this account of the incident, could find that defendant's conduct was objectively unreasonable. See, e.g. Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999) ("reasonableness under the Fourth Amendment should frequently remain a question for the jury"); Faust v. Clee, Civ. No. 03-1436, 2006 WL 3025960, at *4 (E.D.Pa. Oct. 23, 2006) (question of whether an office's use of force was excessive is "generally left to the jury."). Summary judgment may only be granted if no reasonable trier of fact could find for the non-moving party. Anderson, 477 U.S. at 248. Here there is a genuine dispute over a material fact and, accordingly, summary judgment is inappropriate. Celotex, 477 U.S. at 323.

## II. Injury to Plaintiff's Hand

To prevail on a Section 1983 claim, the plaintiff must prove that the conduct in question was a proximate cause of the plaintiff's injuries and consequent damages. See Martinez v. State

---

[3] Once again, it is unclear whether Novak was present at the time Defendant handcuffed plaintiff's right hand. Novak's report details that he was present for the entire exchange, but plaintiff testified that Novak had left by the time plaintiff's right arm was handcuffed.

of Cal., 444 U.S. 277, 284-85 (1980).  The Third Circuit has established that this determination is generally inappropriate on summary judgment.  "While we are aware that a Section 1983 plaintiff must demonstrate that the defendant's actions were the proximate cause of the violation of his federally protected right, the presence of the requisite causation is normally a question of fact for the jury."  Rivas, 365 F.3d at 193 (internal citations omitted).

      Defendant asserts that he is entitled to summary judgment because plaintiff has not demonstrated that he was actually injured by defendant.  Once again, at the summary judgment stage, the Court construes the facts and inferences in the light most favorable to the non-moving party.  Curley, 298 F.3d at 276-77.  In general, a party opposing a summary judgment motion may not simply "rest upon mere allegations, general denials, or [] vague statements."  Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991).  However, the Third Circuit has recognized that pro se inmates are situated differently from typical parties opposing summary judgment.  "[A]n inmate who is proceeding pro se, is in a decidedly difficult position from which to generate 'record evidence' on his behalf ... [u]nder these circumstances, his affidavits ... are about the best that can be expected from him [at summary judgment phase of] the proceedings."  Brooks v. Kyler, 204 F.3d 102, 108 n.7 (3d Cir. 2000) (citations omitted).

      Plaintiff states in his complaint that defendant "assaulted plaintiff causing [his] right hand to be broken."  In subsequent deposition testimony on April 19, 2006, plaintiff stated that his injured wrist "got worse as a result of [his] arrest" on May 17th, 2002, and that his dislocated knuckle "moved" further out of position as a result of defendant "stomping" on his hand.  In his opposition to defendant's motion for summary judgment, plaintiff claimed that his "right hand was stomped on several times by the defendant," which led to a "permanent injury to his right hand."

A physician's examination at the Raritan Bay Medical Center on May 1, 2002 noted that plaintiff suffered from a displaced fracture in the mid shaft of the fourth metacarpal in his right hand.  Plaintiff alleges that he sought medical treatment for his injury at the Middlesex County Adult Correctional Center following his May, 17, 2002 arrest, but did not produce any medical records to support this allegation.  On June 8, 2004, plaintiff complained of "severe pain" in his right hand to the medical department of the Garden State Youth Correctional Facility.

As discussed later, a plaintiff need not demonstrate that he was seriously injured in order to prevail on a claim that a police officer used excessive force.  Although plaintiff does not provide medical records supporting his allegation that his injury was exacerbated by the events of May 17, 2002, he clearly makes this assertion in his deposition testimony.  In order to grant summary judgment, the Court would need to find plaintiff's testimony to be incredible.  Once again, this is not a determination appropriate for summary judgment.

Defendant also argues that, even if there is a genuine dispute that plaintiff was injured as a result of his arrest, plaintiff's claim must fail because his injuries were of a *de minimis* nature. The Supreme Court, writing in the Eighth Amendment context, has refused to sanction the use of excessive force even if the end result does not leave visible marks or scars.  To hold otherwise, the Court wrote, "would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.  Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today."  Hudson v. McMillan, 503 U.S. 1, 8 (1992).  The Third Circuit recently applied this approach in Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002).   There, the court denied defendants' summary judgment motion where the extent of a plaintiff's injuries was disputed.  Id. at 649.  The court made it clear that the minor

degree of plaintiff's injury, while relevant to the totality of the circumstances, could not, on its own, serve as a complete defense to an excessive force claim:

> We do not, of course, suggest that a fact finder could not consider the *de minimis* nature of injuries along with all of the other circumstances []. A properly instructed fact finder could, after considering all of the evidence, conclude that Smith's injuries were so minor that the defendants' account of the incident is more credible than Smith's, and/or that the force used was not of constitutional dimension. That may have been exactly what the district court did here. However, that is an issue of fact to be resolved by the fact finder based upon the totality of the evidence; it is not an issue of law a court can decide.

Id. This Court finds the Third Circuit's rationale applicable in Fourth Amendment scenarios as well. Other circuits have come to similar conclusions regarding the Fourth Amendment. See Hayes v. N.Y. Police Department, 212 Fed. Appx. 60, 62 (2d Cir. 2007) ("we have permitted claims to survive summary judgment where the only injury alleged is bruising"); Tekle ex rel. Tekle v. U.S., 457 F.3d 1088, 1095 (9th Cir. 2006) ("the pointing of a gun at someone may constitute excessive force, even if it does not cause physical injury").[4]

It is not clear that the injuries plaintiff alleges – which is more serious than a bruise or scratch – are properly considered *de minimis*. However, for the reasons discussed in the context in the Eight Amendment, the Court does not find that the plaintiff needs to allege significant injuries to survive a summary judgment motion. The extent of his injuries are a factor, along with others, that a jury should consider in determining whether defendant used excessive force.

---

[4] Not all circuits agree that a claim may proceed if the plaintiff's injuries are minimal. Some circuits to have found it essential (if not wholly dispositive) that plaintiff display more than a *de minimis* injury to maintain an excessive force claim under the Fourth Amendment. See Cortez v. McCauley, 478 F.3d 1108, 1129 (10th Cir. 2007) (en banc); Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999).

**III. Qualified Immunity**

Defendant argues that he should prevail on summary judgment because he is subject to qualified immunity. The defense of qualified immunity "shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Thomas v. Independence Twp., 463 F.3d 285, 291 (3d Cir. 2006) (citing Behrens v. Pelletier, 516 U.S. 299, 305 (1996)). A defendant has the burden of establishing that he is entitled to qualified immunity. Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).

The qualified immunity analysis is a two-step inquiry. The Court must first "consider whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right." Id. The second step is to determine whether the right was clearly established. Id. If it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted" the officer can not avail himself of the defense. Saucier v. Katz, 533 U.S. 194, 202 (2001). If, on the other hand, "the officer's mistake as to what the law requires is reasonable, [] the officer is entitled to the immunity defense." Id. at 205. The Court notes that the inquires for qualified immunity and excessive force are distinct. Id. at 204. However, the parties dispute whether defendant "secured" plaintiff's hand or "stomped" on it. It may be lawful for an officer in defendant's situation to exert significant pressure on plaintiff's arm, particularly if he was concerned that plaintiff may have been concealing something in his brace or cast. However, the defendant could not reasonably have believed that it was lawful to repeatedly "stomp" on the plaintiff's hand after plaintiff extended it. Accordingly, without resolving the factual dispute at the core of this matter, the Court is unable to find that defendant is entitled to the defense of qualified immunity as a matter of law. See Monteiro v. City of

Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006) ("[a]lthough qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by a jury.").

### IV. Punitive Damages

Defendant requests a finding that plaintiff is not entitled to punitive damages. In a Section 1983 case, punitive damages "are available where the defendants have acted with a reckless or callous disregard of, or indifference to, the rights and safety of others." Keenan v. City of Phila., 983 F.2d 459, 469-70 (3d Cir. 1993) (quotations and citations omitted). Such damages are "reserved [] for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." Id. at 470 (quotations and citations omitted). Once again, material factual issues prevent the Court from granting defendant's request. If jurors were to believe plaintiff's account of the incident, they could reasonably conclude that defendant acted with a callous disregard of plaintiff's rights.

Moreover, the Court is not persuaded by defendant's argument that plaintiff is barred from requesting punitive damages because he failed to request them in his complaint. Plaintiff is litigating this case pro se and accordingly, his pleadings are to be construed liberally. Defendant does not specify when he was first put on notice that plaintiff was requesting punitive damages, nor does he point to any prejudice resulting from late notice of such a request. Absent such showing, the Court will not grant defendant's request.

### CONCLUSION

For the reasons given above, defendant's request for summary judgment is denied.

                                            **s/William H. Walls**
                                            United States Senior District Judge